19-5-0-0-9. Thank you, Your Honor. May it please the court, counsel, Shira Keevel, Assistant Federal Public Defender for Defendant Appellant Darren Woodard. This case is about pre-indictment delay. An important defense witness committed suicide two years after Mr. Woodard's initial arrest and a year before the indictment was filed in this case, and the court correctly found that Mr. Woodard was actually prejudiced. The only issue on appeal is the judge's legal error in limiting the impermissible reasons for delay to an intent to secure a tactical advantage at trial in Mr. Woodard's federal case. He only said that at one point. He stated there were rules generally all over the place, didn't he? The district court, when he was talking about tactical advantage. Yes, Your Honor. There was one point in time where the district court said, hey, why don't we talk about what this rule generally means? The judge said, Mr. Woodard essentially said, Mr. Woodard's posited this reason for delay was, in fact, something that had been conceded by the government throughout, that the delay was in order to secure Mr. Woodard's cooperation. The judge said, hey, if this is proven, is this sufficient? And the government said, no, that won't be sufficient. This has to be essentially what the 11th Circuit and intended to cause prejudice at trial. The district court said, I agree with you. That's the only time that there was any discussion about what the standard was and what it meant. In the ordinary case, isn't the tactical advantage usually directed at the prosecution under consideration? I think that there's lots of reasons, Your Honor, that an indictment can get delayed. It can be delayed for tactical advantage at trial. It can be delayed for harassment. We know that this rule isn't limited to advantage at trial because of the inclusion of harassment. So the government could delay because they know holding charges over someone's head, it's going to interfere with them getting security clearance, interfere with their ability to get funding for their company or to change their immigration status, and that wouldn't be permitted. So we have a... Of course, there's no evidence in this case of any reason for tactical delay here, is there? Your Honor, the evidentiary hearing didn't end up touching on this issue because the district court had already ruled as a matter of law that no matter what it was that Mr. Woodard proved, it was going to be insufficient as a matter of law on this second prong of the due process violation. But there's a lot of information in the record so that we know that remanding this case for a new evidentiary hearing would not be a waste of time. The government specifically in their response to their first motion said, hey, a substantial portion, that's the government's words, a substantial portion of this delay was in order to try to get Mr. Woodard to cooperate. They've walked that back a little bit, but Mr. Woodard has also then proffered additional information saying not only did they try to do this at the beginning, but they came back to me. They came back to me with a federal agent two years later and they were trying to get me to cooperate again. There isn't evidence on the record because again, when a judge makes this legal ruling says, okay, I'm interpreting the scope of the law. The scope of the law is when I look for intent, I'm only going to look for intent as it is regards to this trial. I mean, if you look back on where the whole concept of pre-indictment delay started, we're looking at the Supreme Court in Marion, right? Yes, ma'am. There the court very clearly ties the interest in not having excessive pre-indictment delay to the right to a fair trial. To me at least, that suggests that the concern was that even where you fall within the statute of limitations, which the court says is the normal buffer, that you can have an unfair disadvantage imposed on the defendant at trial because of the pre-indictment delay. And it definitely seems to be tied to his right to a fair trial during this proceeding. There's nothing about trying to convince him to be an informant that's tied to his right to fair trial. And your honor, the prejudice in this case is tied to the fair trial. And I think that's all the court was talking about in Marion and Levasco. So essentially, this is a burden shifting thing and saying, usually government, you're okay to wait until the statute of limitations. But if you do this for some interest, that's harassment or to gain a tactical advantage, then you're taking upon yourself the risk that the passage of time will then prejudice the defendant at trial, even if that's not your specific intent. I think if your honor looks at the series of cases that includes Levasco, Justice Marshall was very clear to say that they weren't setting limitations. He included, I think it's footnote 19, that references a whole included holding a club over the defendant's head, which is what we're arguing is what happened in this case. Well, do they have to hold the club over the defendant's head with the intent to interfere with his right to a fair trial? Or can it be unintentional? We just took too long to try and convince him to be an informant. And your honor, I don't think it's about, we took too long, but this is what we were doing. This was our priority. The government has the right to decide what cases to initiate, when to initiate them, but they also set priorities. And in this situation, they said, our priority here is to try to pressure Mr. Woodard to cooperate, even though he's not doing it. But that's what our priority is. And they do take upon themselves this risk. If this court, I understand that doing is not a published case, but the advantage, in doing, which is really the only case I found where a dismissal has been upheld under this standard, was that the government delayed the filing to try to get a longer state sentence. And they promised they weren't going to file to try to get a longer state sentence. So that's clearly something that's separated from the tactical advantage at the trial itself. Can I ask you about prejudice? Yes, your honor. Not prejudice in the sense that, on the underlying claim, but harmlessness is really what I want to ask you about. There were three rulings as I understand it. In the first ruling, the district court says that, quote, it appears to be nothing more than inertia or ordinary negligence on page 167. So in the first hearing, the judge doesn't rely on the issue that you're talking about. What does it mean to have the required intent? He's just saying that there's no question that it has to be something more than negligence. So would you agree that the first hearing on this motion to dismiss would not have been prejudicial? And your honor, we're not challenging the first ruling, so yes. All right, let's go to the second hearing. And so the second hearing on pages 17 and 18 of the transcript, he relies on two things, the second of which is you're interpreting the colloquy about, I would think the cases are consistent with that. That's the second issue. The first issue is, at the second hearing, he says that there was no prejudice. And you're not, and so that's not, that would have been a barrier to the ruling on the second motion, even if Judge Frizzell had entertained or adopted your position, right? You still would have lost at the second hearing. Correct, your honor. And so in the third hearing, he does reverse himself on prejudice, but then he goes back and says that there was a failure to show that it was more than ordinary negligence on page 82. So the third hearing, like the first hearing, he relies on the fact that it was just negligence, right? I disagree, your honor, and here's why, is that the court at the second hearing, which again was, I don't know if it was minutes or hours before the third hearing, it was the same day while they were waiting to empanel a jury. The district court specifically said, when we're talking about this intent, it's with regard to trial. And so then later that same day when he's saying inertia or ordinary negligence, that has to be read in light of his legal ruling, that it's inertia or ordinary negligence with regard to the trial, which that's all the evidence showed. But it was a problem, and it's not harmless error for a number of reasons. One, this is a constitutional issue. This is certainly, this legal error was not harmless beyond a reasonable doubt. It meant that the court didn't consider this when it was making its ruling at the third hearing after the evidentiary hearing. It meant that Mr. Woodard had no reason to put on evidence having to do with the reason for delay, because he'd already been told, as a matter of law, you can prove anything you want, but you can't win. So because the court had made one factual determination against him and one legal determination against him, he then went and was able to present the legal determination. That's all he needed to do to then be able to appeal this decision that was made at the second hearing. Again, it was the only time in all three hearings that the district court considered, what does this mean? What does it mean for an intentional tactical advantage? The court never took that back, never said, OK, but even if I accept that this could be a reason that I'm finding as a factual matter, he doesn't do any of those things. He makes this one legal ruling. He then follows his own legal ruling. That's the only way that we can read this record. There was no second objection, Your Honor. That's right, but it's certainly preserved. Mr. Woodard, in what I think he titled his supplemental motion, proffered this reason. He said, this is the reason for the delay, and that's enough. I should win. And then the court said, well, is that enough? Government said no. The court said, OK, I agree with the government. It's not enough. We don't require an additional objection after that when Mr. Woodard is the one who had squarely presented that issue to court, and it was actually ruled on. OK, let me ask you another question about the second hearing. And I understand your argument. The prosecutor argues, I don't have it in front of me, two things. One is that you do have to show, he or she argues that the defendant does have to show that there was a tactical advantage in this trial, right? And you say that that's wrong. And then the prosecutor says, for example, it would be sufficient if there was a pre-indictment delay that is performed in order to get some advantage in this very case. And then the judge says, I'm reading the case law consistent with that. Is the whole argument with regard to what the pronoun that means? It could mean two things. It could mean the first sentence of the prosecutor, which your argument is that that's legally incorrect. The example, if Judge Rizzo was talking about the example, the second sentence, then there was no problem with that because that clearly would be sufficient to show a non-constitutional pre-indictment delay. So your argument is that we have to assume that the referent is the first sentence and not the second sentence. No, Your Honor, that's not the argument I'm making. What the government is proposing here isn't an example, simply an example. It's the outer boundary. So the government is saying, if you read the case law, the only thing that could refer to as gaining a tactical advantage at the trial for which the charges have been delayed. So that's the government saying that's the outer boundary. It then gives an example that falls within that outer boundary. So delaying because it's hoping that some defense witnesses might die or become available or their memories become more foggy, that's an example that falls within those outer boundaries. I think that the that is referring to that whole conversation. But I also think it's clear that neither the general description nor the specific example is the outer boundary. And again, I'd refer this court to Foxman, the 11th Circuit case. They do a really good job. In that case, the judge had simply neglected to make a finding on intentionality. And that court sets out guidelines and basically says, yes, what the government's talking about here is something we'd call bad faith. And for sure, that's not OK. And also, clearly, to attain a tactical advantage at trial generally is not OK, but that it's broader than that. And Justice Marshall really, it seems from Levasco, wanted to leave it to the district courts in the first instance to be ruling on these. These are factual questions. And the district court should have an opportunity to see the evidence on this issue and have the correct legal rule when it makes its determination. And if I may reserve the balance of my time. OK, sure. May it please the court, Thomas Duncombe for the United States. The district court found six times at three different hearings that Mr. Woodard had failed to show that the government intentionally or purposely delayed indicting him. Three of those times, the district court made a factual finding that the record showed, at most, ordinary negligence on the part of the government in bringing charges. Mr. Woodard has not and cannot show that that factual finding or those legal as to the rulings on intentionality and purposefulness. Additionally, when the district court raised what it called an interesting factual question as to tactical advantage, the district court did not purport to and did not announce a legal standard. And Judge Bacharach, I want to refer to a question that you asked. You're right that the judge did not indicate which part of the government's argument it was agreeing with when he said, I'm reading the case law consistent with that. And it's also important to remember that immediately after that discussion, which didn't involve any request for argument on behalf of the defendant or any attempt to be heard by the defendant, the court said, I'm finding that you haven't showed intentionality or purposefulness, in short, that it was more than ordinary government negligence. And the court specifically on the page directly after that conversation about what the case law shows or what's consistent with the case law, the court said, you have to show intentionality and purposefulness with regard to some tactical advantage. And so it's clear in various ways that the court was not announcing a legal ruling. And it's clear that the court was considering all the evidence that the defendant had to offer on whether there was any intentionality and purposefulness. Does the government have a tactical advantage? Has to be a tactical advantage in the case that's being tried? Yes. As we stated in our brief, it is our position that the tactical advantage must be tied to the prosecution at hand. Although the court didn't reach that issue in this case because the court didn't have to reach that issue in this case. Because under the exact legal theory that Mr. Woodard presents in his briefs to this court, he presented that exact legal theory to the district court. And the district court found you have shown no more than ordinary government negligence. And additionally, I wanted to touch on Mr. Woodard's argument that he preserves asking essentially for en banc review of this court's legal interpretation of Marion and Lovasco. As Mr. Woodard acknowledges, this panel cannot overturn panel precedent from this court in its interpretations of Marion and Lovasco over the years. But even if this court were to go en banc and take up that issue, this court should not overturn its prior interpretation of Marion and Lovasco. Because this court's prior interpretation of Marion and Lovasco is correct. It's consistent with the plain language of Marion. It's consistent with the spirit of Marion and Lovasco as they talk about the limited role that due process has to play in this process. And it's important to note that in Lovasco, there was some evidence of prejudice on the record. Two defense witnesses had died. There was some evidence of improper actions by the government in delaying. The Eighth Circuit had found that the government's actions were unjustified, unnecessary, and unreasonable. The court in Lovasco did not overturn those findings or disagree with those findings. And if the court in Lovasco had been intending to apply a balancing test between the reasons for the delay and the prejudice to the defendant, the court could have remanded the case to the Eighth Circuit with instructions that the district court conduct the balancing test. Instead, the court just reversed and said it was improper for the district court to have dismissed. That is good indication, in addition to the plain language of those cases, that there was no balancing test intended, that the two-pronged approach that this circuit and a majority of circuits have taken on pre-indictment delay is correct. Is Lovasco limited to investigative delay? No. Lovasco talked about the various reasons why prosecutorial discretion is important in the context of deciding who to charge and in investigating a crime that it already has evidence of. And that's important for several reasons. It's not a crime that they already have evidence of. It's trying to pressure Mr. Woodard to be an informant so they can get evidence to prosecute new crimes. Do you see that as being significant? No, Your Honor. And first of all, I want to correct something that Appellant's counsel said. The government did not concede at any point that the delay was because the government was trying to sign up Mr. Woodard as a cooperator. Waiting three years because the government is hoping that someone will cooperate is insane, not to mention anything about implausible, for two important reasons. Number one, the information becomes less and less interesting after a few months or even a year. Number two, because as the district court stated at the beginning of the first hearing, the principal argument that Mr. Woodard was introducing was that he was being lulled into a sense that he would not be prosecuted in this case. In other words, the more time that went by, the less and less he was thinking he would go to trial. The less and less that you think you're going to go to trial, the less likely you are to feel pressured to cooperate. And Mr. Woodard did not introduce any evidence at any of the hearings that the government actually contacted him after March 2, 2015, the date of the arrest in this case, about cooperating in this case. Now, initially, it's true the government stated in its initial briefing, adopting the argument of the defendant, that a substantial portion of the time was spent trying to sign up Mr. Woodard as a cooperator, but the government corrected that during the first hearing when the government said that after March 2, 2015, the officers gave Mr. Woodard their phone number and said, if you want to cooperate, give us a call, and he never called them back. And if he wanted to know whether the charges were still being considered against him, he could have called that number that they gave him. There was no contact after that. Well, that doesn't seem very plausible to me. You give your card to someone who's at risk of federal felony charges, and you say, hey, if we don't contact you, contact us to get this thing moving along. I mean, it seems like the natural reaction would be to keep your head down. And I think that's right, and I think that's why the judge got it right at the first hearing, when he interpreted Mr. Woodard's argument as not being that he felt more and more pressure as time went on to cooperate, but that he felt lulled into a false sense of security because he hadn't heard anything in three years and assumed that these charges were going to go away. Now, of course, Marion and Levasco both articulate the fact that the principal guard against overly stale criminal charges is the statute of limitations. And Levasco articulates that there are important considerations that the government has to be allowed to bring to bear when it's investigating a case. When there's even a simple drug transaction, that can turn into a much bigger investigation. And it proceeds often in the following way. A defendant sells one gram of crack cocaine to another person. The government contacts a cooperator, sees if the cooperator can buy cocaine from that defendant. Then the government tries to get the cooperator to give the defendant a phone number so they can get a pen register on that phone. Then after they get a pen register and examine those calls, they go up on a T3 wire, and the cases proceed in that manner very often. And as that investigation is proceeding on the defendant and on other defendants, the government's case is getting stronger. So a tactical advantage over the defendant must mean something different from simply an advantage, must mean something different from simply the government is continuing to investigate and if there are no other questions, then the government would yield the rest of its time and would urge this court to affirm the district court's ruling. Thank you. An advantage gained by trying to pressure someone to cooperate when you have no speedy clock hanging over them, when you have no over yourself and you have no attorney assigned to represent them is a tactical advantage. You can make an agreement with that person that is unenforceable. There's no evidence that exists. It can be done in vague terms so that even if there were evidence, it would be unenforceable. The government is providing this court with hypothetical factual scenarios. And what really needs to happen is we need to go back to the district court to find the real factual scenario of what actually happened in this case. Thank you counsel. This matter will be submitted. I appreciate the excellent advocacy from both sides today and in your briefing. I thought your briefing for both sides was really stellar on both sides. The court is adjourned until